UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID ADAMS #462766                           Case No. 2:23-cv-186

                    Plaintiff,               HON.  PAUL L. MALONEY
                                             U.S. DISTRICT JUDGE
        v.

NATE HOFFMAN, *et al.*,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants Hoffman, Smith, Watt, Matilla, and Herbert's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies against them.  (ECF No. 23.)

State prisoner David Adams filed an unverified complaint under 42 U.S.C. § 1983 alleging that Defendants – Baraga Correctional Facility (AMF) Deputy Warden (DW) Nate Hoffman, Corrections Officer (CO) Shawn Smith, CO Kaden Watt, CO Brian Mattila, and CO Christian Hebert − violated his First, Eighth, and Fourteenth Amendment rights, MDOC policy, and state law.  (ECF No. 1.)

Adams says that at lunch on April 23, 2023, CO Hebert threatened him saying, "Adams I bet this special food makes you burn in pain for hours! U shouldn't have filed your complaint you u dumb [N-word] monkey!" (*Id.*, PageID.4.)  After eating the lunch, Adams says that he was in pain and experienced burning, itching, and throbbing for hours.  (*Id.*)

At breakfast on May 2, 2023, Adams states that CO Hebert threatened him again.  (*Id.*)  CO Hebert allegedly told Adams, "Your complaints can't save you from us Adams… I bet you feel pain if you eat this special food you dumb [N-word] monkey-burn monkey burn."  (*Id.*)  After breakfast, Adams says he was again in pain for hours and experienced burning, itching, and throbbing.  (*Id.*)

At lunch on May 15, 2023, CO Mattila allegedly threatened Adams before causing him "serious physical injury."  (*Id.*)  CO Mattila then said, "Here you dumb ass [N-word] monkey, your still gonna feel pain unless you starve yourself, your complaints & grievances cant save you from us Adams."  (*Id.*)  After lunch, Adams says he was in pain for hours, experiencing burning, itching, and throbbing.  (*Id.*)

At lunch on May 20, 2023, CO Smith allegedly threatened Adams before causing him "serious physical injury."  (*Id.*)  CO Smith stated, "Adams your gonna have to hunger strike to avoid the pain you'll feel after eating this special food, u shouldn't have filed your complaints u dumb jewish [N-word] money."  (*Id.*)  After eating lunch, Adams says he was in pain for hours experiencing burning, itching, and throbbing.  (*Id.*, PageID.5.)

At dinner on May 24, 2023, CO Smith allegedly threatened Adams before causing him "serious physical injury."  (*Id.*)  CO Smith stated, "More special food means more pain Adams…Hunger strike <u>or</u> kill yourself you dumb Jewish [N-word] monkey -or- eat and burn."  (*Id.*)  After eating dinner, Adams says he was in pain for hours experiencing burning, itching, and throbbing.  (*Id.*, PageID.5.)

At breakfast on May 26, 2023, CO Smith allegedly threatened Adams before causing him "serious physical injury." (*Id.*) CO Smith stated, "Your complaints cant save u from us u dumb Jewish [N-word] money… Your gonna burn if u eat this special food Adams." (*Id.*) After eating breakfast, Adams says he was in pain for hours experiencing burning, itching, and throbbing. (*Id.*, PageID.5.)

At dinner on May 27, 2023, CO Watt allegedly threatened Adams before causing him "serious physical injury." (*Id.*) CO Watt stated, "[B]urn Adams burn… u get the special food… u could just kill yourself Adams if the pain is too much, your grievances and complaints will only make it worst on u." (*Id.*) After eating dinner, Adams says he was in pain for hours experiencing burning, itching, and throbbing. (*Id.*, PageID.6.)

Defendants Hoffman, Smith, Watt, Matilla, and Herbert's move for summary judgment due to Plaintiff's failure to exhaust his administrative remedies with respect to the claims in his complaint. (ECF No. 23.) The Defendants argue Adams did not exhaust his administrative remedies by naming them in a properly exhausted grievance through Step III of the MDOC grievance process. (*Id.*)

A review of the records before the Court indicates that Adams was on modified access to the grievance process at the time of each incident and was not denied requested grievances. In the opinion of the undersigned, Adams failed to properly exhaust his administrative remedies. Therefore, it is respectfully recommended that the Court grant the Defendants' motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549

---

[1]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

6

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues."  *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

8

defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Relevant Documents on Exhaustion

In his complaint, Adams states that he was on "grievance restriction," or modified access, at the time of each incident alleged in the complaint. (ECF No. 1, PageID.8.) Adams says that the "Grievance Office failed or refused to provide [him] w/ the requested grievances." (*Id*.) Shown below is the relevant paragraph of Adams's complaint:

> ✳ ㊼ Plaintiff was on a Grievance Restriction at the time of each incident and the Grievance Office failed or refused to provide Plaintiff w/ the requested Grievances therefore the Grievance process was Unavailable - SEE MDOC's PD 03.02.130(MM.).

(*Id*.)

In their motion for summary judgment, the Defendants fail to grapple with Adams's assertion that he was on modified access at the time of the incidents alleged. (ECF No. 24.) Defendants argued only that "Adams did not file any Step III

---

[2]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

grievances which he filed at Step I in 2023" and therefore "did not exhaust any claims in his complaint against any MDOC Defendants."  (*Id.*, PageID.100)

In his unverified response to the Defendants' motion, Adams emphasizes that he was on "a Grievance Restriction" at the time of the acts alleged in the complaint. (ECF No. 25, PageID.125.)  Adams asserts that he was on modified access from June 14 to September 12, 2023.  (*Id.*)  He stresses that during that time he requested grievance forms for all seven incidents of alleged acts of misconduct by the Defendants but says that he was "ignored" by the Grievance Coordinator.  (*Id.*) Relevant paragraphs of Adams's response are shown below:



(*Id.*)



(*Id.*)



(*Id.*)

Defendants address the issue of modified access for the first time in their reply and its exhibit, arguing that Adams was not thwarted and thus did not exhaust his remedies while on modified access.  (ECF No. 30; ECF No. 30-1.)  Defendants present

an affidavit by GC Hamel which shows the following:  (1) that Adams was on modified access from June 14 to September 12, 2023, (2) that Hamel logged and processed each of Adams's kites related to grievance forms, (3) that Adams was granted one Step I grievance while on modified access, (4) that Adams appealed nine grievances to Step II while on modified access, and (5) that Adams was not prevented from pursuing a Step III appeal.  (ECF No. 30-1, PageID.148–49.)

## V.  Analysis

### A.  First and Eighth Amendment Claims

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains.  Fed. R. Civ. P. 56(a).  The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c).  Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)).  To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746.  *Id.*  In contrast, complaints that are unverified are not considered Rule 56 evidence.  *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that pro se plaintiffs, like Adams, are held to a less stringent pleading standard than parties represented by an attorney. *Grinter v.*

*Knight*, 532 F.3d 567, 577 (6th Cir. 2008).  At the summary judgment stage, pro se plaintiffs are thus not held to the same technical requirements as represented parties.  Still, pro se plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

A review of the record indicates that Adams's complaint and response lack declarations of veracity as called for in 28 U.S.C. § 1746.  (ECF No. 1; ECF No. 25.) In stark contrast, Adams provides declarations of veracity that would comply with § 1746 in each of the eight attachments to his original complaint, as shown below:



(ECF No. 1-1, PageID.13.)



(ECF No. 1-2, PageID.14.)



(ECF No. 1-3, PageID.15.)

> I am ready to testify IN a Court of Law to this fact & truth. Pursuant to 28 USCS 1746 (2) I declare under the penalty of perjury that the foregoing is true and correct...

(ECF No. 1-4, PageID.16.)

> I am ready to testify IN a Court of Law to this fact & truth. Pursuant to 28 USCS 1746 (2) I declare under the penalty of perjury that the foregoing is true & correct...

(ECF No. 1-5, PageID.17.)

> I am ready to testify IN a Court of Law to this fact & truth. Pursuant to 28 USCS 1746 (2) I declare under the penalty of perjury that the foregoing is true & correct...

(ECF No. 1-6, PageID.18.)

> I am ready to testify IN a Court of Law to this fact & truth. Pursuant to 28 USCS 1746 (2) I declare under the penalty of perjury that the foregoing is true & correct...

(ECF No. 1-7, PageID.19.)

> I am ready to testify IN a Court of Law to this fact & truth. Pursuant to 28 USCS 1746 (2) I declare under the penalty of perjury, that the foregoing is true & correct...

(ECF No. 1-8, PageID.20.)

That the declarations of veracity were present in each of the eight attachments to Adams's complaint, but not in the complaint nor in the response suggests that

13

Adams was aware of the declarations' significance and that their exclusion from key documents was no accidental misstep by an inexperienced litigant.  Thus, even under the less stringent standard of review reserved for pro se plaintiffs, Adams's complaint and response were not executed in a manner sufficient for verification and do not constitute evidence under Rule 56.  *See Cooper*, 2019 WL 5273967, at *2.

In his unverified complaint and unverified response, Adams alleges that he was on modified access to grievances during the period relevant to his allegations. (ECF No. 1, PageID.8; ECF No. 25, PageID.125.)  Adams states in his unverified response that between June 14 and September 12, 2023, he requested and was refused grievance forms seven times.  (ECF No. 25, PageID.125.)  Adams asserts that he "will disclose all <u>6</u> document[s] to the Court," but fails to attach them to his response because he "cannot afford to get photocopies for the Court."  (*Id.*)

GC Hamel's affidavit presents conflicting evidence to Adams's unverified assertions.  (ECF No. 30-1.)  Hamel states that as the AMF Grievance Coordinator, he is obligated to receive and process Step I grievances in accordance with the MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances.  (*Id.*, PageID.145.)  Hamel explains that prisoners may send him a kite inquiring as to the status of their Step I grievance, requesting to resubmit a Step I grievance, or requesting a Step II grievance appeal form.  (*Id.*, PageID.146–47.)  Hamel says that he does not have "any discretion" in deciding whether to log or process a kite, a grievance request, a Step I grievance, or a Step II appeal because failure to do so could lead to his termination.  (*Id.*)

In his affidavit, Hamel further explains the MDOC modified grievance access policy outlined in ¶¶ JJ to NN of MDOC Policy Directive 03.02.130.  (*Id.*, PageID.147.) Hamel notes that a prisoner is placed on modified access for filing an excessive number of grievances or when found guilty of misconduct for filing an unfounded grievance.  (*Id.*)  Paragraph KK states that the Warden must notify a prisoner in writing as to their modified access status.  (*Id.*)  While on modified access, the prisoner can only obtain grievance forms through the Grievance Coordinator, who determines whether the issue is grievable and otherwise meets criteria outlined under the grievance policy.  (*Id.*)  To obtain a Step 1 grievance, a prisoner must submit a request explaining the basis for his proposed grievance containing all the information required at Step I.  (*Id.*)  MDOC policy further requires the Grievance Coordinator to maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial.  (*Id.*)

GC Hamel states that where a prisoner on modified access submits a request for a Step I form, he must review it for conformity with MDOC P.D. 03.02.130.  (*Id.*) If the request does not conform with the policy's requirements or is otherwise subject to a rejection, Hamel would then deny the request for the Step I grievance.  (*Id.*)

Hamel states that his review of grievance office records for Adams showed that Adams was placed on modified access on June 14, 2023 for his misuse of the grievance process.  (*Id.*, PageID.148.)  Hamel stresses that Adams was placed on modified access because he filed six rejected grievances within a thirty-day period.  (*Id.*)  Hamel shows that Adams filed five of the six rejected grievances in just three days.  (*Id.*)  Shown

15

below are the memos requesting Adams be placed on modified access and informing

Adams of his modified status:

DATE:        June 9, 2023

TO:          J. Howard – A/Warden
             Baraga Maximum Correctional Facility

FROM:        T. Hamel - Grievance Coordinator
             Baraga Maximum Correctional Facility

SUBJECT:     Modified Access Request – Adams 462766 (3-127)

This prisoner has filed (7) grievances (6) which have been rejected/denied under PD 03.02.130 all within a 30-day period.

Per PD-03.02.130, Prisoner/Parolee Grievances, Paragraph JJ, "A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days."

Based on the above information, it is requested that prisoner Adams 462766 be placed on Modified Access Status effective 6/14/2023 and commencing through the 90-calendar day period. 9/12/2023

(ECF No. 30-1, PageID.154.)

DATE:        June 21, 2023

TO:          Adams 462766          LOCK:  3-127

FROM:        T. Hamel - Grievance Coordinator
             Baraga Maximum Correctional Facility

SUBJECT:     Modified Access Status

Per the approval of the Warden, you have been placed on Modified Access Status to the grievance process in accordance with PD 03.02.130. You are on Modified Access Status for 90 days effective 6/14/2023 through 9/12/2023 and will remain on Modified Access regardless of transfer to another facility.

Per PD-03.02.130, while you are on modified access, you are to request grievance forms from my office only. If I determine that the issue presented is a grievable issue and meets the criteria outlined in policy, I will provide you with a grievance form. If you attempt to file a grievance using a form not provided by this office, you will be notified that the grievance will not be processed and your Modified Access Status may be extended for an additional 30 days for each violation.

(*Id.*, PageID.152.)

16

Hamel shows that despite Adams's assertions to the contrary, Adams submitted a Step I grievance request on July 28, 2023 while he was on modified access and that grievance request was granted.  (*Id.*, PageID.148.)



(*Id.*, PageID.181.)

Hamel also shows that Adams appealed nine grievances to Step II while he was on modified access.  (*Id.*, PageID.148.) D

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec |
|---|---|---|---|---|---|---|---|---|
| 20230686 | 462766 | ADAMS | AMF | 28I | 6/7/2023 | X | 7/12/2023 | X |
| 20230687 | 462766 | ADAMS | AMF | 28I | 6/7/2023 | X | 7/12/2023 | X |
| 20230688 | 462766 | ADAMS | AMF | 28I | 6/7/2023 | X | 7/12/2023 | X |
| 20230694 | 462766 | ADAMS | AMF | 28I | 6/9/2023 | X | 6/28/2023 | X |
| 20230695 | 462766 | ADAMS | AMF | 28I | 6/9/2023 | X | 6/28/2023 | X |
| 20230708 | 462766 | ADAMS | AMF | 28I | 6/13/2023 | x | 6/28/2023 | X |
| 20230709 | 462766 | ADAMS | AMF | 28I | 6/13/2023 | x | 6/28/2023 | X |
| 20230710 | 462766 | ADAMS | AMF | 28I | 6/13/2023 | x | 7/12/2023 | x |
| 20230711 | 462766 | ADAMS | AMF | 28I | 6/13/2023 | x | 7/12/2023 | X |

(*Id.*, PageID.183.)

17

Hamel shows that after his time on modified access ended, Adams filed ten Step I grievances and filed six Step II appeals between September 19 and December 19, 2023.  (*Id.*, PageID.148.)  Adams's Step III Grievance report shows that he filed no relevant Step III appeals.  (ECF No. 24-3, PageID. 115−24.)  Shown below is Adams's Prisoner Grievance Summary Report, displaying the dates Step I grievances were filed highlighted in yellow and the dates Step II appeals were filed highlighted in blue:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 20231151 | 462766 | ADAMS | AMF | 12E2 | 9/21/2023 | d | 10/26/2023 | D | | |
| 20231181 | 462766 | ADAMS | AMF | 17I | 9/27/2023 | d | | N | | |
| 20231241 | 462766 | ADAMS | AMF | 28I | 10/3/2023 | X | 10/18/2023 | x | | |
| 20231270 | 462766 | ADAMS | AMF | 17I | 10/5/2023 | d | | N | | |
| 20231287 | 462766 | ADAMS | AMF | 28I | 10/9/2023 | x | 10/26/2023 | x | | |
| 20231292 | 462766 | ADAMS | AMF | 01I | 10/10/2023 | d | 10/26/2023 | d | 1/12/2024 | D |
| 20231297 | 462766 | ADAMS | AMF | 09E | 10/10/2023 | d | | N | | |
| 20231338 | 462766 | ADAMS | AMF | 28E | 10/18/2023 | d | 12/5/2023 | x | 1/12/2024 | D |
| 20231477 | 462766 | ADAMS | AMF | 12E1 | 11/16/2023 | d | 12/12/2023 | d | | |
| 20231615 | 462766 | ADAMS | AMF | 07F | 12/19/2023 | d | 1/11/2024 | d | | |

(ECF No. 30-1, PageID.183.)

Hamel states in his affidavit that "[w]hile Adams was on modified access status, [he] logged and processed every kite Adams had submitted to request a Step I grievance form."  (*Id.*, PageID.149.)  Hamel says that "[a]t no time did [he] ever fail to log or process a Step I grievance, a Step II appeal, or a kite requesting a Step I grievance from Adams, nor did [he] ever prevent Adams from pursuing a grievance through the grievance process."  (*Id.*)

The record shows that Adams was on modified access to the grievance process at the time of the incidents alleged.  (*Id.*, PageID.148, 152.)  Because Adams's

18

allegations that he was denied access to grievances during this period were presented through his unverified complaint and unverified response, the undersigned is unable to credit those allegations as evidence for Rule 56 purposes. *See Cooper*, 2019 WL 5273967, at *2.  GC Hamel's affidavit and supporting documents show that Adams was not denied access to grievances while on modified access, as he successfully obtained one Step I grievance and appealed nine other grievances to Step II.  (ECF No. 30-1, PageID.183.)  Despite having access to the grievance system, Adams failed to appeal any relevant grievance to Step III and thus failed to exhaust his available administrative remedies.  (ECF No. 24-3, PageID.115−24.)

Therefore, it is the opinion of the undersigned that Adams failed to properly exhaust his claims under the First, Eighth, and Fourteenth Amendments against the MDOC Defendants.  The Defendants' motion for summary judgment on the basis of exhaustion should be granted.

## B.  State Law Claims

Adams asserted violations of various MDOC policies and procedures, as well as a state tort law.  In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining

19

state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

If the Court adopts the undersigned's recommendation, it will dismiss all of Adams's federal claims.  The balance of the relevant considerations would therefore weigh against the exercise of supplemental jurisdiction.  As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over the state law claims.

## VI.  Recommendation

The undersigned respectfully recommends that this Court grant the Defendants' motion for summary judgment on the basis of exhaustion.  It is recommended that the Court dismiss Adams's claims under the First, Eighth, and Fourteenth Amendments, as well his claims arising from MDOC policy, and state law.

Dated:  November 6, 2024                         /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

20